Okay, our next case is Mike Oziegbe Amiegbe versus Attorney General United States of America, number 25-2607. We'll hear first from Mr. Osorio. Thank you, Your Honor. May it please the court, Benjamin Osorio for the petitioner, Mike Amiegbe. If I may, I'd like to reserve three minutes for rebuttal. Congress provided that a petition for review is the sole and exclusive means of judicial review for cat claims, reviewable with the final review of a final order of removal. Congress did not condition that review on a challenge to removability. Mr. Amiegbe filed exactly the petition that Congress described to seek judicial review, and he now seeks review of that petition of his final order of removal with his review of his cat claim. Can you explain that to me factually? Yes, Your Honor. And in terms of the actual... How are you asking us to review a final order of removal, right? Well, I'm asking this court to review the final removal order that came from the BIA with the cat claim. So that order... Conceded in the administrative proceedings? We are conceding he's removable, Your Honor. But just like any concession from removability, there may be potential avenues for relief if he were eligible. However, in this case, given the nature of the criminal history here, we conceded that he was removable for the aggravated felonies and didn't have viable relief before the immigration courts. So if I understand the court's question, I do not believe that he needs to raise a challenge to the removability itself, because if I did that, honestly, I would be presenting a frivolous claim. I mean, on his face, it's an aggravated felony for all offense. It's $730,000. So why do we have jurisdiction? I think that this court has jurisdiction. I guess let's start with the series of Supreme Court cases. You've got Nasrallah, you've got Santos-Zacharia, you've got Riley, right, that are all... Nasrallah is a cat only case. Riley is a reinstatement case. Santos-Zacharia is a reinstatement case. If you look at Riley, which is the most recent case, the court assumed that it had jurisdiction in that case. So we have this concurrent opinion from Justice Thomas, who's talking about, hey, potentially there may be another jurisdictional defect upon remand, but the court remands. So if the court had decided it didn't have jurisdiction, there is no point in remaining to the Fourth Circuit. So I guess it certainly didn't decide that it didn't have jurisdiction. And it didn't pass on the jurisdictional question that Justice Thomas raised in his separate writing. But I guess the question is, what does that mean? I mean, I think it means that the court heard the question and continued to believe that it had jurisdiction. And that's why I bring up both Nasrallah and Santos-Zacharia. Because Justice Alito, in Riley himself, in the opinion just before Justice Thomas, is discussing, we have to first decide as the court whether we have jurisdiction over this matter. And that to me means on all jurisdictional elements. I don't think that the court could just say, okay, we're only going to decide this other jurisdictional element, even though we don't actually think that we have jurisdiction on this and we're going to remand to the Fourth Circuit. That doesn't make any sense to me. The other thing that I think that, I mean, it's sort of a Franken statute, right? 1252 compared with 2242D, right? Because of the timing of the Real ID Act, FARA, when the statutes were actually implemented, we get this statute that has been kind of cobbled together. But I don't see how you can have 1252A-4 and not have review before this court or before the Supreme Court of just cat-only claims. I'm sorry. You know, it's a really interesting point because A-4 does seem to say cat-based jurisdiction. But then we've also got this thing that people are calling the zipper clause, you know, the zipper clause for that. And so what do we do with that zipper clause? You know, what are we supposed to do when you have a cat claim? You know, how are we supposed to review a cat claim? Let's say A-4 gives jurisdiction to review cat claims. How do we fit that in with the zipper clause, which says it has to be, you know, decided at the same time as the final order of removal when there is no final order of removal up for kind of, you know, our review? What do we do with that zipper clause? Well, I think to Judge Bovee's question, you know, I think that the zipper clause is the vehicle. It's saying this is the vehicle. The petition for review has to be the vehicle because we didn't want them going doing habeas through the district court. That's why the law itself was changed. So I think the zipper clause, again, with FARA, make it so that Congress says, like, no, this is the way that we want you to seek judicial review. We don't want you to go to the district courts. And I think that's why the district court or I apologize, the zipper clause is phrased as that way. I think if the courts, you know, there's been sort of a presumption of judicial review that the Supreme Court has been leaning through through these cases. If not, why not? Why even have Nasrallah if they didn't think that they wanted judicial review of just cat claims? I'm not sure if that answer your honor's question. No, no. I mean, I think you're right. We've got these Supreme Court cases that they seem to be what sometimes the Supreme Court refers to. And I'm not making this up. This is their own phrase, this drive by jurisdictional ruling. It's kind of their way of saying, hey, we don't have to follow our prior case because we just drove by on the jurisdictional ruling. It wasn't one of the issues that we kind of granted cert on. And so you're right. We've got this data set. But the flip side of the data set is it does begin to feel like drive by jurisdictional rulings. And hence, the remand might have just been we never, ever thought of that. The hard part of that zipper clause. And I'll just tell you what the hard part is, is for me is when it says shall be. This is judicial review shall be available only in judicial review of a final order under this section. And so it seems to say, you know, maybe that could be isn't final order under this section, final order of removal. Or do you think that that could mean some other sort of final order? I mean, I think given Riley, I think it's saying it's a timing issue. I hear Riley to say, okay, this is mandatory claims processing rule with regards to this is how you have to act. And this is the time period that you have to act. But I don't see anything jurisdictional in its nature. I didn't, you know, I don't want to go too far on this. But I think that the Supreme Court has basically said unless Congress says it's jurisdictional, it's not. I mean, that's what I take from San Jose, Korea. That's what I take from Riley. And so I don't there's nothing in here that says that you have to only fight removability. And I don't think this case is exactly on point with Monsalvo. But I think Monsalvo sort of stands for that proposition that you don't have to fight all prongs to try to litigate one potential prong, which could provide relief at some point. So, so let me just let me just make this really. I'm just going to telegraph. I'm not going to hide the ball at all here. This point might be favorable to you. I'm trying to read the zipper clause in the way most favorable to you because it says final order under this section. Elsewhere, it says final order of removal. And so what I'm asking is, could you read the zipper clause is saying possibly. No, we just we don't we don't want anything interstitial coming in. We just want final orders in the order on the denial of cat relief. Well, not a final order of removal is nonetheless a final order under this section and section of refers to the fullness of 1252. So so it's a favorable question to you. I'm asking, do you think the zipper clause isn't as tight as maybe Justice Thomas said it was when he thought it meant only final orders of removal? I guess I would agree with you pre Riley, even though it's favorable to me. I'm not going to argue against myself here. I think that Riley sort of changed the landscape here, because if you take that point of view, which I would have held pre Riley, then the final administrative order and withholding only claim somebody that was subject to reinstatement, like the individual Navarrete. And that IJ decision denying his review of the RFI would have been the final administrative order, which I again pre Riley would have said that's the final order. So I, I, you know, like I said, to some extent, I would agree with you, but I do think it's problematic post Riley and I've been struggling with that myself and how to reconcile Riley with, you know, 1252 a four because it comes up. You know, I mean, it's this isn't the first time we've heard Justice Thomas opine on this isn't the first time, you know, and as well as this came up at Riley this comes up so I mean, obviously, given what's happened in the Ninth Circuit, you know, this is potentially going to end up back before the Supreme Court. So, you know, with regards to jurisdiction here I think that the court does have jurisdiction to reviewed only the cat claim, because it's tied to the removal order in Navarrete, the, the removal was not the actual removal order given post Riley. He only appealed the decision of the immigration judge according to what the law would be post landscape of Riley. Switching gears earlier in the case, you filed a motion for a stay of removal. Yes, sir. And, you know, I think in the first paragraph can see that there wasn't an imminent removal as you said basically this could happen at any time. And the, the lead argument in the motion was can we're going to pronounce that one has been abrogated. And so I don't have to make the same merit showing in a stay as appropriate. And I wanted you to flesh that out for me and give me a sense of whether that's still your position. I think that with regards to, you know, sort of harm to the government and with regards to, you know, sort of deference to both the reliability on the government's positions. Yes, your honor, I would argue that, you know, there's not as much agency difference anymore obviously post Sloper bright. And I would say that there are, you know, and I guess the other thing I would argue is with regards to third country removals. There's not as much of a need for deference to the government's position because they demonstrate an ability to perform these third country removals. I'll go back to it. It didn't feel to me that when I read it like at the time you were making a deference point as much as a point about. It was an argument that executive branch action can abrogate a Supreme Court decision, as I read it. And I wanted to understand that better. I mean, I would say that, that there are actions in both foreign national policy and with regards to immigration that the executive can take to not necessarily circumvent but that can take that would receive deference that could interfere with somebody's right to seek judicial review. So, you know, again, if an action was taken, you know, to remove somebody before that they had an opportunity to contest their movability or before they had an opportunity to express their fear, you know, the government might get deference on that because the person's already outside the country and it may be more difficult. So is it an argument that in your view executive branch action has sort of helped you on the irreparable harm part of the can. I think so because if there's not a pathway, sort of DHS has a policy where if you win your case they're supposed to facilitate your return. And so that's happened several times we want petition for reviews, especially for people that were lawful permanent residents, and then we won. Like in Winston vassal beholder, she was originally charged as an aggravated felony. We want that it was overbroad brought her back so there, there was a DHS policy to facilitate return. I mean, that has become more onerous, and then also, you know, in certain times has been almost impossible to facilitate the return so I do think that the irreparable harm standard. I apologize. I'm over my time, but I do think the irreparable standard is higher now because the level potential for harm is higher. Thank you. Yeah. No, no, I'd love to hear from you on kind of, you know, one of the key cases that feature I was late getting it. One of the key cases is, is the role of kind of tip and Lopez on on kind of what the standard for acquiescence is. You know, and I think tip and Lopez kind of suggest that we, we should focus on, you know, not on on efforts over outcomes. And it matters whether the government can actually prevent torture, not whether it's just trying. Do you do read tip and Lopez is going that far. And if so, how can you square tip and Lopez with our prior precedents that say, you know, galleys Figueroa governments likely response to future reports of crime is taking and commencing investigation and that does not constitute acquiescence. That doesn't that doesn't say that the that the investigation will be successful, or that it is even capable of being successful. So, what are your thoughts on kind of the acquiescence standard for cat after tip and Lopez that seems to suggest that in addition to everything else in the my reframework, there has to be a showing that the government can actually prevent the torture. So, I guess I'm going to answer your question here shortly but I would say that I think our strongest legal argument on the merits is the my reframework, but turn into your honors question with regard to tip and Lopez, I would say that I do think tip and Lopez kind of goes to this a public official acquiescence level, instead of a national level response that you're saying okay these these governments they prosecute murder, but we can show that there's 97% impunity or that the local police are not responding to murder. In this particular case, I would say that you have, you know, you have individuals who've been arrested multiple times you have confessions, but no prosecutions, you have a family that's been attacked multiple times, but there's no order of protection is noted by the immigration judge. So I think tip and Lopez actually supports our point that that there has been nothing done in this particular case that demonstrates the government. I don't want to assert the asylum standard but the government here is willing and I think you have every evidence that a public official has acquiesces here, given that you have officials that have confessions and then turned around and release people multiple times and you have a family that's continued to be attacked and make police reports but nothing's been done so I do think that we satisfy the tip and Lopez standard I do agree, your honor that it might have been a slightly higher standard than before. But I think that also goes to the regulation of the breach of duty. You know, it's interesting to me though but but do you think that that the United States can satisfy the tip and Lopez standard. Do you think that there's times in the United States where people say, you know what, I'm calling the police I'm trying to, I'm trying to stop harm. I don't know if you know the facts of the shaney case that were talked about in the prior oral argument, but it was it was a young child who was, who was, was, you know, beat beaten by his father, his father, his stepfather, and his mom kept calling the police saying please please please get keep him safe keep him safe, and they didn't. I guess I'm just saying, um, you know, that I would, that's really close to maybe torture, you know, it does this tip and Lopez take us to the place that not even the United States can can satisfy the standards for, you know, acquiescence to torture. I'm not going to your honor I was listening and my ears did perk up because it did sound like a breach of duty sort of standard that we were discussing prior in the prior council case but yes I mean I agree there may be certain instances where we would say that there has been a breach of duty I don't know whether that means the regulations need to be revisited, or a new standard needs to be imposed. But, you know, just because we may not always satisfy the duties to the treaty, I don't think that it necessarily means we perform a different legal analysis here, at least based off of the current precedent, but I guess I'm saying it's a little weird if all of a sudden people could go to foreign countries say, say please don't send me back to the United States they're going to torture me there because the police don't investigate these reports of child abuse in the house enough. And we want to stay in in X country, it at one level, does it doesn't that reading kind of just assumed such a, you know, you know, such the ability of the state to stop everything when not even in this country do we do we operate under that premise. I don't know I would use your actual hypothetical, where the police officers driving home the victim of an abuser who you know might have been in a car crash. And if she discloses if she says like you were taking me to the abuser this man has been beating me, you know, he set me on fire before he put me in the hospital three different times. I would say that then satisfies the breach of duty, and if that happens here in the United States, you know, then they may have breached their duty. Okay, thank you. Thank you. Miss Edwards. Afternoon, your honors and may it please the court and Edwards on behalf of the respondent the Attorney General of the United States. This court should deny the immigration petition for lack of jurisdiction, because Congress's scheme in conjunction with this court or with the Supreme Court's precedents have made clear that some challenge to a final order of removal is a jurisdictional challenge to a final order of removal, the petitioner must be asking this court to at least review or examine some aspect of that order of removal, to be sure this court does have jurisdiction to review cat claims, but that's only together with the courts review of a final order of removal. And so a freestanding challenge to a cat claim cannot exist in isolation from the review and coupled with the final order of removal itself. What do we do with the Supreme Court's rejection of the idea that petitioner might have to raise a holy frivolous objection to a final order of removal in order to get a withholding claim, and it's a separate issue from cat but but but they said, why would we make them raise something frivolous in order to get to withholding claim. Right, so in in Manzano the court was specifically looking at rejecting you know the government's argument in that case with respect to pressing a challenge to one aspect of the final order of removal, just to get review of the entire final order of removal and you wouldn't have to press a frivolous challenge to get review of some other aspect of the final order, the distinguishing factor between that argument in this case is that a challenge to a cat claim is not a challenge to a term or some aspect of the And so Manzano doesn't displace the government's argument here, you still have to have some challenge to the final order of removal in order to get review of the cat claim because the jurisdiction for the cat claim is dependent on the court being in review of that order. Isn't the implication of that argument that anyone who has an aggravating aggravated felony or some other reason why they're not able to challenge a final order of removal is ineligible for relief under the Convention against torture. Well, the criminal conviction would make them ineligible for asylum, or they are, you know, the conceded removability because of that. So anyone who's unable to challenge their final order of removal by virtue of statute is unable to get review of the agency's decision on a cat claim. That may be true in some situations, but it's not a categorical rule for all situations, you could still challenge as long as there is a challenge to some aspect of the final order removal or a term of that final order, even if you're conceding removability itself. So maybe there's a constitutional question that would come up with respect to the proceedings, some ruling that would affect the validity of the order of removal, that would be a sufficient challenge in order to preserve the cat claim. So if I'm going to make an inference, the reason for your position is what we're calling what we call the zipper clause. Is that right? That coupled with the language of FARA itself. Yeah, you know, it's interesting to me, because that that kind of makes sense. But we also when I read a for 1252 a for the very first phrase says notwithstanding any other provision of law statutory or non statutory. So why do I care about the zipper clause? Why do I care about 2242 of FARA? The very first phrase says notwithstanding anything else. And then it says, including the habeas statute or other habeas provision, says the mandamus statute. And it says a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of any cost or claim under the United States Convention against torture. So what doesn't isn't a fair reading of a one that maybe the zipper clause applies to things like cancellation of removal, adjustment of status, withhold statutory removing. But but not cat. Cat is got cat leads with a notwithstanding much like a but much like a five that allows judicial review of of orders of removal to proceed. What do you make of that notwithstanding clause and how can you look beyond a for once once a for puts in a notwithstanding clause. I think there's two responses to that question. One is some of those concerns may be true if a for itself was the jurisdictional grant to give this court power to review cat claims. But we know the jurisdictional grant for the court to review cat claims actually comes from 2242 and far itself as the Supreme Court's precedents and talking about a for make clear a for itself is not a grant of jurisdiction for the court's power. It's merely a channeling present provision similar to be nine that merely sets forth the procedural framework for how to get review and file for review of that claim, which is why it says the petition for review. So additionally, with respect to the notwithstanding language that that specific subsection a for does still say that it has to be in accordance with this section. So it would not displace all other sub subdivisions within 1252 itself because it's by virtue of its language incorporating being in accordance with 1252. So if so, if section 2242 D, I think of far was was stricken, then then then you wouldn't read a for is giving jurisdiction to review cat claims. It only depends on far. Yes, when Congress was setting up for itself and entrusted the courts entrusted the executive itself to administer United States has obligations under the treaty, and then it provided for a limited review of the administration of those obligations within filing a petition or within the conjunction with reviewing a final order of removal itself. So the jurisdictional grant for review does come from 2242. And that's why you see a for mirrors that by saying it's exclusive jurisdiction for the Court of Appeals as opposed to things like a habeas petition without the district courts. And so therefore this is merely just confirming that it's this court's exclusive jurisdiction to review those claims and the procedural posture upon which to bring about those review, or those claims for this court's review is in conjunction with the PFR process as stated in 1252. So, so, sorry, just to trace back, I'm sorry, but but a for is a channeling provision, only then to you. Correct. And that's consistent with what we also see in be nine the court has construed that this court's jurisdiction to review final orders of removal also take place in 1252, a one, that's the jurisdictional grant for the court to review a final order of removal, the parallel for cat orders would be far then. And that's why you see that the channeling provision in a for as well as the zipper clause and be nine. Those are not separate grants of jurisdiction, they're merely procedural directives of how those claims should be brought before this court. Well, I'm sorry. One more one more just tag along on the structure of the statute on on a one you say a one seems to grant jurisdiction for review of final orders of removal. Why isn't it just a procedures clause doesn't it just refer to the procedures used in chapter 158 of title 2028. Well, it also says that judicial review of finals or removal are available under 1252 and so that's what setting up that this court, then reviews those final orders removal from the agency itself. But addition judges and, you know, circle back to you as well. And your, your question to opposing counsel was talking about the language of, you know, review of an order of the final order as opposed to judicial review of the final order of removal as used elsewhere in the statute, and that can be reconciled with also a final order itself. So we see the conditioning and far of being a final order removal as opposed to just a final order, and then elsewhere consistently we see under 1252 and speaking about final orders we're talking about final orders of removal. But again, because all of these provisions require the court to be in quote review of a final order of removal were consistent with 1252 that requires the court to be in review of a final order removal. We know that the cat claim itself cannot be construed as sufficient to raise a challenge to a final order of removal and the Supreme Court's precedents. There's all makes very clear that a cat order or an order denying protection under cat does not conclude that an aliens deportable or otherwise affect the order of removal whatsoever. So it's not a legal ruling affecting the validity of the final order. It is separate, it is distinct, and it does not merge into the final order of removal. My friend on the other side says, well, we're challenging the order of removal here because it was issued at the same time is the cat claim, but again, and as well the court treats these rulings as distinct, even if the orders occur within the same document. And so, so, so just to tease this out just just just on the ground practical consequences. If a person brings a cat claim that's unassociated with a challenge to a final order of removal. There's no judicial review for them. If it's untethered to the review of the final order. That is correct. There would be no judicial review, but we recognize that there's a presumption of judicial review. At least the Supreme Court tells us that we look at things with a presumption of judicial review. And so doesn't that mean we should start with the assumption that there is judicial review and read the code to find out why there isn't judicial review as opposed to look for why there is judicial review if there's a presumption or what do you think on that? That's exactly right. That is the presumption that we assume judicial review unless Congress has displaced it and we see in 12 or 2242 of FARA that the conditioning of the courts judicial review of the final order is used with the language of except as part of the review of the final order. And so we have to construe, of course, Congress granted jurisdiction to review a cat, but that's dependent on. Sorry to interrupt you. But doesn't that key line in FARA, I think it's 2242 D, I don't have it in front of me, but I'm doing this from memory, say nothing in this subsection shall be shall be construed as meaning this not that it doesn't exist, but just that nothing in that subsection does it. Why would we read FARA if it's limited to the balance of how that subsection should be construed as applying to to other possible grants of jurisdiction? And I did that from memory, so if I'm wrong, it's a little embarrassing, but just correct me. No, you're right, Judge Phipps. I think it's because the second half of that section, it conditions it on saying, except as judicial or except as a part of the review of the final order of removal. And so I'm not saying that's a taking away of jurisdiction, it's clarifying that the jurisdiction to review claims under cat has to be in accordance with 1252 in the courts review of the final order of removal and so I'm merely pointing to that language to say that it has to be in conjunction with the final order of removal is the panel engaged with my opposing counsel, the court is not in review of a final order of removal in this case, although he claims to be in review of the final order. None of the challenges presented to this court asked the court to look at the validity of the final order itself. They are purely challenges to the cat clean the court must be in review must be judicially examining an order in order to be reviewing that. I'm so sorry to get in again, but what about procedural due process, you know, we typically say that, you know, the baseline elements of procedural due process, I think there's three that everyone kind of says these this is canonical notice meaningful opportunity to be heard in front of an impartial tribunal. Do you think that procedural due process is met here when that impartial tribunal is non judicial for cat and withholding and and all of the other claims are going to be excluded under your version. Well, first I'll push back I don't think it's excluding a lot of claims that come up from the immigration proceedings any claim that would affect the removal or itself would be merged into the final order and can be reviewed. So often data set wise so often removability is conceded. And that may not be the government's data set that may be the data set that reaches the court of appeals, but but but at least for our data set so often it's cat only it's withholding only because that's just that that's where the action is. Right, so I'll clarify one important point about the government's position that you just raised and then I'll answer your question about the due process issue. The first is, with respect to whether the alien must only challenge removability, it is not merely challenging removability of itself so long as there's another challenge pressed to some aspect of the order or term of the final order of removal which could be beyond just removability, as we see in Monsalvo itself, a question about what the ruling meant was sufficient to press a term and bring that within the court's jurisdiction there. So, as long as there's some challenge to some term or aspect of the removal order that sufficient isn't a colorable challenge to raise that in order to obtain judicial review of the agency's cat decision. Would the petitioner have to raise a frivolous claim for judicial review of some aspect of the order of removal. Well, I think the court said it has to be a colorable and consequential so I think that would be the requirement to get jurisdictional review, and the concern about what do you do for the individuals that there is not then judicial review because they only have the ability to challenge the cat claim. And I would say that's the product of the congressional judgment reflected by the words in the statute, and that's the judicial review Congress all fit to give over the executive obligations to comply with the treaty, and the precedent of the Supreme Court as well as the statute, make clear that's what's relevant here and the court can't displace that congressional judgment about what judicial review should be possible is not foreclosing the availability of cat relief whatsoever to the aliens or the petitioners in these case, it's merely saying that the confines of judicial review have to be within the words that Congress written and Congress wouldn't have to be more specific about its intent to remove judicial review of an agency's application of a treaty. I see my time's over so I'll answer briefly but I think it's written within the words of FARA that they said this is what judicial review will be in here's that here's the limitations of that and the requirements of it. It's merely saying you could have judicial review of this in conjunction with review of the final order of removal, and it's merely because there's no final order being this courts being asked to review that condition precedent of FARA is not satisfied here, and that's a reflection of the Congress's language. Can I ask you another question about sources of judicial review. People generally think that the Administrative Procedure Act gives judicial review over final agency action. A lot of people put that at 702. I tend to think it's 704 myself, but it doesn't matter. At the end of the day, everyone knows, I think, that there's judicial review of final agency action under the APA. And so if there is, why isn't that the source of jurisdiction here? And then why isn't the answer, yep, we have that. And I guess what does the zipper clause do if that provides an independent source of jurisdiction to say, well, no, that random jurisdiction is not good enough because you don't have your tag along. I guess we'd say that the zipper clause forecloses any judicial review there because there's no tag along challenge to the final order of removal. Is that your position? So addressing the zipper clause first. Yes, and I think that's the product of Nasrallah. The majority is holding in Nasrallah where it said, although that the court has jurisdiction to review cat claims and talked about FARA itself, as well as cited the language of the zipper clause, and I think this is at page 582, 583 of Nasrallah, the court said that merely means it can be reviewed together with, not that it merges into that final order. And so I think that reasoning may seem quite intriguing upon the face of the statute, but looking at the court's interpretation of that, the Supreme Court, the majority in Nasrallah rejected that, which was the basis of Justice Thomas's review, but nevertheless is the holding that's binding on this court. With respect to the APA challenge or the APA point you mean about the jurisdiction, I think we see Congress displace that in passing the INA and setting up strict judicial review of claims arising out of the removal proceedings in that context. And then again, through subsequent acts, Congress has curbed the court's jurisdiction, most recently, or not most recently, but most importantly, under IERA, where it said that it's walking back the court's authority to second guess the executive's determination over immigration matters. So we do see that general backdrop has been pulled back by Congress's specific actions. Again, there's not a final order of removal here. That's the court's being asked to review, and therefore there's not the necessary jurisdiction to review the CAT claim. At least one more thing. I'm so sorry to ask you another question, but I asked your opposing counsel about Tip and Lopez and kind of what it says and what it means in terms of the acquiescent standard and kind of the oddity of maybe the United States can't even satisfy kind of the Tip and Lopez standard. Do you think that there have been prior cases in the Third Circuit in particular that foreclosed the Tip and Lopez extension of acquiescence such that there has to be proof that the foreign state can stop the torture? And if there's not proof of that, then acquiescence can – there will be acquiescence? Well, I think we start from the presumption that I believe the Third Circuit holds, that we read our precedents, you know, not to contradict the prior precedents, but in accordance with it, and we harmonize them as best to each fit. And I think you mentioned the case that I would call to here to opposing counsel. I think it's not Tip and Lopez. It's the – it'll come back to me in just a moment, but it talks about that. Is it Figueroa? Is it Galli's Figueroa? Yes, it's a two-part – Figueroa is the last part of it, where it says if the court's actually taking – if the local government's taking action and responding to reports, it can't be construed that they're acquiescing. And I think we would have to harmonize that. Sure, we can't focus on outcomes or on efforts over outcomes if the efforts of themselves are wholly unable to provide that protection. But I think where you have local law enforcement that's investigating, that's obtained confessions, that's done interviews, it's hard to say that they're acquiescing to reports of torture there. And so I think harmonizing that, we have to limit how we would read the court's subsequent precedent, especially if a country like the United States could not even ensure perfect protection and free of harm to its citizens in any regard. And I think holding any government to that standard is too high when we're looking at what acquiescence means. I have a question for you about the jurisdictional arguments. I'm looking at pages 584 to 585 of Nasrallah, which appear to address precisely the arguments you're making. And it says, as the government sees it, if a CAD order is not merged into a final order of removal, then no statute would authorize a court of appeals to review a CAD order in the first place. I'm going to skip ahead a couple of sentences. The premise of that argument is incorrect. Section 2242D of FARA, that says it can be reviewed alongside a final order of removal. But then it says, moreover, as a result of the 2005 REAL ID Act, Section 1252A4 now provides for direct review of CAD orders in the court of appeals. In short, our decision does not affect the authority of the courts of appeals to review CAD orders. So, I mean, it says it can be, it says FARA gives some jurisdiction, and moreover, 1252A4 now provides for direct review. So, why isn't that binding on us? Well, A4 also says that it must be reviewed in conjunction with the section of 1252. Specifically, it says that you can review a petition for review, shall be the sole and exclusive means, but it's still in accordance with 1252 itself. So, there's 1252A1, there's 1252A4. So, you're saying it has to be in conjunction with a final order under 1252A1? It says it with this section. A4 says with this section. But the Supreme Court heard this argument, and they said 1250, FARA says you can review CAD alongside a final order of removal under 1252A1. And then it says, moreover, the Real ID Act provides for direct review of CAD orders. Are they not talking about two different things here? Well, A4 was, A4 still requires it to be in conjunction with that review. And the language of FARA itself says the court has to be in review of the final order of removal, which is the exact same language that we see in B9. And so, it doesn't, even though the Real ID Act and A4 are here talking about the provisions and the manners in which the alien can file for review of the CAD order itself, it can't be completely untethered to the review process for a final order of removal. Then why mention A4 providing for direct review of CAD orders at all? And that's not sort of that opinion. Well, I think it's walking through the different provisions of the jurisdictional grants under 1252 as well as FARA that provides for the court's jurisdiction. And all of the Supreme Court's precedents that walk through the court's ability to review CAD orders, it talks about A4, but not as some separate jurisdictional grant, but as part of the statutory scheme that governs that. And so, filing a petition for review is the exact means by coming out of the removal proceedings, the means by which you get review of that CAD order. It's merely talking about the procedural process, not a separate petition that's filed in the court of appeals untethered to the removal proceedings or out of the final order of removal process that this court is going to review. So, in one sentence when they say reviewing CAD claims together with a review of final orders of removal, and then in the next sentence they say direct review of CAD orders, they're actually talking about the same thing. I mean, yes, because you can appeal the PFR process of the CAD order itself is how you get this court to review that order denying CAD. But FARA itself, which is the jurisdictional grant for this court to provide that review, still presupposes review of that final order of removal. And here, this challenge is not in precedent order to that final order of removal, and therefore the court would not have jurisdiction to review the freestanding CAD claim. For those reasons we asked. I'm sorry, but Judge Freeman really does get to this kind of, you know, this very awkward point of Nasrallah where it just rejects, I think. Doesn't it reject this argument? It says the government says you can only review CAD claims if they're part of a final order of removal. No, that's not right. It can be reviewed together with the final order of removal, so it's presupposing the existence of that final order of removal being on review before this court. And so you can't completely devoid the CAD order itself from the order of removal when the statutory language granting the court jurisdiction to review that CAD claim itself requires to be as part of the final order of removal, and Nasrallah itself rejected the idea that the CAD claim or any rulings on the CAD claim merge into and become part of that final order of removal. It's a separate and distinct order, but yet that review of that order is tied to the order of removal itself under the clear language of FARA. For those reasons, we ask that the government, or we ask the court to deny the petition. I know you can't see him, but I want to make sure that Judge Phipps has, I want to check on whether he has any more questions or whether Judge Bovee does. Judge Phipps? No, thank you. I think I'm good. Okay. All right. Thank you. Thank you. Just briefly, Your Honors, I'd like to take up the facts sort of related to Judge Freeman's last question to my friend on the other side. If you go look at Nasrallah, Nasrallah, for much the same reasons here, did not appeal whether or not he was removable. He did not challenge the final order of removal in the same way that the government is saying that he would have had to. He only appealed the denial of CAT. And it would not make sense at this point for the Supreme Court to have said and almost expanded jurisdiction for the circuit courts of appeal for judicial review to then now say, actually, we didn't mean what we said then. And we should have never had jurisdiction to review that because he never challenged the final order of removal. And then quickly, with regards to the merits, I would say that the board, you know, exceeded the scope of review. It, in my mind, engaged in fact finding, reweighed the facts. It never actually pointed out any errors with the I.J. specific findings. And it overlooked the specific evidence while saying, hey, he's only relying on general country evidence when the I.J. was relying on very specific evidence from the record, including the assistant U.S. attorney's letter and the State Department report findings that then the BIA subsequently overlooked. And then, as I mentioned before, I think that our strongest argument is that on remand, the first time the BIA says, hey, you have to apply the Myrie framework. So then the judge applies the Myrie framework, comes back up, and the BIA denies without actually reapplying the Myrie framework. And I know the government has argued that it's implicit, but it's an entirely, well, it's two of the three or different panel members, and the analysis that they undertake is entirely different than the analysis that they took in the first BIA decision. It never engages with this court's precedent. So we would ask the court to overturn on the merits as well. You know, it's interesting because there's this Supreme, you know, there's these two Supreme Court cases that kind of bookend the analysis. One is Chenery, which says, show your work. You got to tell us, agency, why you did what you did. And if you don't do it, we aren't going to reach it on a different ground. And then the other one is this Bowman transportation case that comes out about 30 years after Chenery, where the Supreme Court says, that's fine. If we can find out why you did it, then that's that's good enough. Why isn't what happened the second go around by the BIA good enough under kind of this Bowman transportation? We can reasonably find out what they were thinking. I think because if you do that, you have to say, OK, the BIA, this is a scope of authority to engage in. And I think that that's slightly different than what your honor is saying. OK, they don't have to be perfect in explaining one plus one equals two or this is how I did my calculated physics. I'm not asking for that. What I'm asking is that they stay in their lane with regards to factual findings. So particular to this court's precedent with the first step of my read, that's a factual finding. How officials will likely act. The board never engages and tells the court or the IJ what's implausible with his findings. It never says, OK, this is what's incorrect. This is actually not supported by the record or this is implausible. They don't give the clear error deference that is to be afforded. And I take that as being different. And that's why if they wanted to be more specific in overturning a clear error, then I think it would have had to satisfy the prior standard. But I take your point that I don't think that they have to say, OK, we're going to get into 100 percent of the record. I don't think that they have to do that. But I do think that they have to deal with the major obstacles. If there's an iceberg in the pathway, in my point here being the AUSA letter, I don't think that they can just overlook that and not mention that, especially when they're saying that he's a reliant only on general country conditions. Thank you, Ernest. Thank you to both counsel. The case is submitted.